UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| W.C. MOTOR COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | 12 C 2307 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| REBECCA TALLEY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Unhappy with an arbitrator's decision to allow class-wide arbitration of a matter brought to the American Arbitration Association by Rebecca Talley, W.C. Motor Company filed this suit under the Federal Arbitration Act ("FAA"), 9 U.S.C. 1 *et seq.*, seeking to overturn the arbitrator's ruling. Doc. 1. After the suit was reassigned to the undersigned judge's calendar, Doc. 38, W.C. Motor sought and received leave to file a second amended complaint, Docs. 42-43. The second amended complaint seeks a declaration that (1) the court, and not the arbitrator, is the appropriate tribunal to decide whether the parties' arbitration agreement permits class arbitration, and (2) the arbitration clause in the agreement does not, in fact, permit class arbitration. Doc. 43 at 6. Talley, the named plaintiff in the arbitration and the defendant here, has moved to dismiss the suit on various grounds. Doc. 53. The suit is dismissed under Federal Rule of Civil Procedure 12(b)(1) for want of subject matter jurisdiction.

**Background**

Talley does not dispute the jurisdictional facts alleged in the complaint, so her challenge to subject matter jurisdiction is facial rather than factual. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009). On a facial challenge to subject matter

jurisdiction, the complaint's well-pleaded factual allegations are assumed to be true, with all reasonable inferences drawn in the plaintiff's favor. *See ibid.*; *Patel v. City of Chicago*, 383 F.3d 569, 572 (7th Cir. 2004). As with a Rule 12(b)(6) motion, the court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in the non-movant's brief opposing dismissal, so long as those facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). To the extent an exhibit contradicts the second amended complaint's allegations, the exhibit takes precedence. *See Forrest v. Universal Savings Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007). The following facts are set forth as favorably to W.C. Motor as these materials allow. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).

In January 2008, Talley bought a used car from W.C. Motor, which charged her a $130 "Documentary & Title Preparation Fee." Doc. 53 at 2. Talley thought that W.C. Motor's charging her that fee amounted to the unauthorized practice of law, *see* Mo. Rev. Stat. § 484.020, violated the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010 *et seq.*, and unjustly enriched W.C. Motor. Doc. 43 at ¶ 7. Because the sales contract contained an arbitration clause, *id.* at ¶ 8, she filed a "demand for arbitration" in March 2009 with the American Arbitration Association, *id.* at ¶ 6. The demand sought to compel W.C. Motor to arbitrate on a class-wide basis. *Ibid.*; *see also* Doc. 43-1.

In December 2009, the Chicago-based arbitrator, after stating that the "parties agree that this Arbitrator has jurisdiction to decide th[e] threshold issue" of whether the contract permits class arbitration, Doc. 43-2 at 2-3, issued a "partial final clause construction award" holding that "the parties' arbitration clause permits this arbitration to proceed on behalf of a class," *id.* at 8.

The arbitrator stayed the award for thirty days to permit either party to seek judicial review, *ibid.*, and neither did.  A few months passed.  Then in April 2010 the United States Supreme Court issued *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 559 U.S. 662 (2010), which held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Id*. at 684.  W.C. Motor filed a motion to reconsider based on *Stolt-Nielsen*, which the arbitrator denied.  Doc. 43-3.

Four weeks later, W.C. Motor filed suit in the U.S. District Court for the Eastern District of Missouri, seeking to vacate the arbitrator's decision and to compel Talley to arbitrate the dispute on an individual basis.  *West County Motor Co. v. Talley*, No. 4:10-cv-01698-AGF (E.D. Mo. filed Sept. 13, 2010) (complaint reproduced at Doc. 14-1).  Talley moved to dismiss the complaint on two grounds: that the dispute did not satisfy the amount in controversy requirement of 28 U.S.C. § 1332(a), and, alternatively, that W.C. Motor's complaint was untimely under the FAA.  Doc. 14-3.  The court agreed with the timeliness argument and dismissed the case.  Docs. 14-4, 14-5.  Meanwhile, the arbitration continued on, and in February 2012 the arbitrator certified a class of up to 1,950 individuals who, like Talley, had paid the $130 fee to W.C. Motor.  Doc. 43-4.  The arbitrator again entered a 30-day stay to allow either side to seek judicial review, *id*. at 11, and W.C. Motor filed this suit, Doc. 1.

As noted above, W.C. Motor's original complaint in this suit sought to vacate the arbitrator's decision allowing class-wide arbitration, which is the same relief it had unsuccessfully sought in its previous federal suit.  Doc. 1.  But when the United States Supreme Court in December 2012 granted certiorari in *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 786 (2012), W.C. Motor requested a stay in this case on the ground that the question on which the Court had granted certiorari "is identical to the primary issue set forth in this case," Doc. 27 at 1.

3

And indeed the arbitration clause at issue in *Oxford Health Plans* is very similar to the contract here. *Compare Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2067 (2013) (noting that the arbitration clause read: "No civil action concerning any dispute arising under this Agreement shall be instituted before any court, and all such disputes shall be submitted to final and binding arbitration … pursuant to the rules of the American Arbitration Association …."), *with* Doc. 43-2 at 2 (the arbitration clause in this case reads: "Any controversy or claim arising out of or relating to this contract … shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules …."). Unfortunately for W.C. Motor, *Oxford Health Plans* held that the arbitrator in that case did not exceed his powers in deciding that the parties' contract permitted class-wide arbitration. 133 S. Ct. at 2071.

Undeterred, W.C. Motor sought and received leave to file a second amended complaint, which does not explicitly seek to vacate the arbitrator's decision, but instead seeks a declaration that whether the parties' contract permits class arbitration is a "gateway matter which is reserved for judicial determination." Doc. 43 at 6. The merits of that issue remain an open question in the Supreme Court. *See Oxford Health Plans*, 133 S. Ct. at 2068-69 n.2 ("We would face a different issue if Oxford had argued below that the availability of class arbitration is a so-called 'question of arbitrability.' Those questions—which 'include certain gateway matters …'—are presumptively for courts to decide. … [T]his Court has not yet decided whether the availability of class arbitration is a question of arbitrability.") (quoting *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (plurality opinion)).

## Discussion

Talley raises four alternative grounds for dismissing this suit: (1) the suit is barred by res judicata, based on the Missouri federal court's decision dismissing the earlier suit; (2) the suit is

4

untimely under the FAA; (3) this court lacks subject matter jurisdiction; and (4) the complaint fails to state a viable FAA claim. Doc. 53 at 1. Subject matter jurisdiction must be addressed first. *See McCready v. White*, 417 F.3d 700, 702 (7th Cir. 2005) ("Ensuring the existence of subject-matter jurisdiction is the court's first duty in every lawsuit."). Only if the court has subject matter jurisdiction may it address whether the suit is barred by res judicata or whether it states a viable and timely claim under the FAA, which are merits issues. *See Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 535 n.4 (7th Cir. 2004) ("we may not consider the issue of res judicata because we lack the subject matter jurisdiction to do so"); *Countrywide Home Loans, Inc. v. Mortgage Guar. Ins. Corp.*, 642 F.3d 849, 854 (9th Cir. 2011) ("[i]n order for a court to adjudicate an FAA claim, … it must have proper jurisdiction over the conflict").

W.C. Motor premises subject matter jurisdiction on the Declaratory Judgment Act, 28 U.S.C. § 2201, and the diversity statute, 28 U.S.C. § 1332. Doc. 43 at ¶ 4; Doc. 56 at 7-10. The Declaratory Judgment Act "is not an independent grant of federal subject-matter jurisdiction." *DeBartolo v. Healthsouth Corp.*, 569 F.3d 736, 741 (7th Cir. 2009). (Nor is the FAA, and W.C. Motor correctly refrains from premising subject matter jurisdiction under that statute. *See Vaden v. Discovery Bank*, 556 U.S. 49, 59 (2009); *Yasuda Fire & Marine Ins. Co. of Europe, Ltd. v. Continental Casualty Co.*, 37 F.3d 345, 352 n.1 (7th Cir. 1994).) That leaves the diversity statute, and because the parties are of diverse citizenship, Doc. 43 at ¶¶ 2-3 (properly alleging that W.C. Motor is a Missouri citizen and Talley an Illinois citizen), the only dispute here concerns whether the amount in controversy exceeds $75,000.

As the proponent of subject matter jurisdiction, W.C. Motor bears the burden on that issue. *See Travelers Property Cas. v. Good*, 689 F.3d 714, 722 (7th Cir. 2012). "The rule governing dismissal for want of jurisdiction in cases brought in the federal courts is that … the

sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938) (footnotes omitted); *see also El v. AmeriCredit Fin. Servs., Inc.*, 710 F.3d 748, 752 (7th Cir. 2013). W.C. Motor advances two grounds, and only two grounds, for holding that the $75,000 jurisdictional minimum is satisfied. Both are without merit.

First, W.C. Motor contends that it may "aggregate claims of the class" to satisfy the jurisdictional amount. Doc. 56 at 8. If that contention were correct, the amount in controversy would exceed $75,000 because there are 1,950 class members who each lost $130, yielding more than $250,000 in compensatory damages. But the contention is wrong. With exceptions not pertinent here—such as where certification is sought under the Class Action Fairness Act, *see* 28 U.S.C. § 1332(d), or where the class members have a "common and undivided interest" in a "single title or right"—the class members' damage claims in Talley's arbitration cannot be aggregated to meet the $75,000 jurisdictional threshold; instead, at least one class member must have a $75,000 claim all by herself. *See Snyder v. Harris*, 394 U.S. 332, 335 (1969); *Travelers Property Cas.*, 689 F.3d at 717-22 (citing cases); 14AA Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice & Procedure* § 3704, pp. 575-76 (4th ed. 2011) (noting "the long-standing and seemingly well-settled rule … that the claims of several plaintiffs cannot be aggregated for purposes of determining the amount in controversy").

In so holding, the court acknowledges *Meridian Security Insurance Co. v. Sadowski*, 441 F.3d 536 (7th Cir. 2006), which states that "the anti-aggregation rule does not apply to a federal declaratory-judgment action between a single plaintiff and a single defendant, just because the unitary controversy between these parties reflects the sum of many smaller controversies." *Id*. at

539. This case is styled as a declaratory judgment action between a single plaintiff and a single defendant. But the dispute in *Meridian* was truly between one plaintiff and one defendant—an insurance company sought a declaration that it was not obliged to defend or indemnify its insured in a state court class action where each class member could recover only $1500 but where the aggregate damages to the class would well exceed $75,000. *Ibid*. In that circumstance, it made sense to consider the entire amount that the insured would have to pay the class if it lost in state court, because that is the amount that the federal plaintiff (the insurance company) would have had to pay the federal defendant (the insured) if the insurance policy applied. Here, by contrast, the dispute here is not actually between W.C. Motor and Talley alone, but rather pits W.C. Motor against the nearly two thousand members of the class certified by the arbitrator. As *Travelers Property Casualty* explains, the anti-aggregation rule applies in these circumstances. *See* 689 F.3d at 718 (distinguishing *Meridian Security* and holding that the anti-aggregation rule applied because the case "had become a multi-party dispute between Travelers and thousands of class claimants"); *see also Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 978 (7th Cir. 2000) (holding that "the amount in controversy from the defendants' point of view is the amount they risk paying [the named plaintiff], not the amount they might have to pay the entire class," even though the named plaintiff sought a constructive trust over the entire class award, because "each of the insureds [that the named plaintiff] wants to represent is entitled to his or her own separate recovery").

Second, and in the alternative, W.C. Motor argues that Talley's claim alone is worth at least $75,000, once punitive damages and attorney fees are included. Doc. 56 at 9-10. The Missouri merchandising practices statute, one of the two statutes under which Talley brought her arbitration, permits prevailing plaintiffs to recover punitive damages and attorney fees. *See* Mo.

Rev. Stat. § 407.025.1. Punitive damages count towards the amount in controversy. *See Hunt v DaVita, Inc.*, 680 F.3d 775, 777-78 (7th Cir. 2012); *Del Vecchio*, 230 F.3d at 978. So do attorney fees where, as here, they are "sought as part of an underlying claim, rather than pursuant to a separate post-judgment right to 'costs' or 'fees' incurred in the litigation." *El*, 701 F.3d at 753; *see also Mo. State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933); *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 958 (7th Cir. 1998). The trouble with W.C. Motor's argument is that Talley's recovery, even including punitive damages and attorney fees, could not possibly exceed $75,000.

If she prevails in the arbitration, Talley's compensatory damages would be $130, the amount of the allegedly improper "Documentary & Title Preparation Fee." Talley may seek to treble her damages under the Missouri unauthorized practice of law statute, *see* Mo. Rev. Stat. § 484.020.2, which brings the total to $390. That statute does not provide for attorney fees or punitive damages.

The anti-aggregation rule would apply to any punitive damages awarded by the arbitrator under the Missouri merchandising practices statute, so Talley would be credited with only her pro rata share of the overall award for purposes of calculating the amount in controversy. *See In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 608-09 (7th Cir. 1997); *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 827-28 (6th Cir. 2006); *In re Ford Motor Co./Citibank (South Dakota), N.A.*, 264 F.3d 952, 963 (9th Cir. 2001); *Gilman v. BHC Securities, Inc.*, 104 F.3d 1418, 1430 (2d Cir. 1997). The court will assume in W.C. Motor's favor that Talley's actual damages would be considered to be $390 rather than $130, even though the statute providing for punitive damages (the merchandising practices statute) does not allow for trebling, while the statute providing for treble damages (the unauthorized practice of law statute)

8

does not allow for punitive damages. *Compare* Mo. Rev. Stat. 407.025.1 *with* Mo. Rev. Stat. 484.020.2. Even then, Talley's punitive damages probably could not constitutionally exceed $3,900, a multiplier of ten, which the Seventh Circuit has recognized as the outer limit of what due process, as understood by *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003), allows.

In *Munro v. Golden Rule Insurance Co.*, 393 F.3d 720 (7th Cir. 2004), the Seventh Circuit held that the amount in controversy was not met, even considering the possibility of punitive damages, where the plaintiff sustained actual damages of only $7,215.01. The court explained: "We are unconvinced that the amount in controversy exceeds $75,000. Even if we were to accept as accurate the parties' total compensatory damages figure of $7,215.01, the punitive damages award would need to be more than ten times that amount to meet the statutory threshold. The Supreme Court, however, has set constitutional limits on the punitive damages multiplier in simple economic-loss cases, such as nonpayment of insurance." *Id*. at 721-22 (citing *State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 410); *see also Anthony v. Security Pac. Fin. Servs., Inc.*, 75 F.3d 311, 317-18 (7th Cir. 1996) (in holding that the amount in controversy was not satisfied, reasoning that a punitive damage multiplier of 17.35, which would have satisfied the amount in controversy, was too large); *cf. LM Ins. Co. v. Spaulding Enters. Inc.*, 533 F.3d 542, 552 (7th Cir. 2008) (holding that a multiplier of 2.75 is within constitutional limits). These precedents apply here, where the underlying proceeding is an arbitration, even though arbitral awards are not subject to judicial review for excessiveness. *See Am. Bankers Life Assur. Co. of Fla. v. Evans*, 319 F.3d 907, 910 (7th Cir. 2003) ("Enforcement of the statutory limits on federal court jurisdiction is no less important when the underlying claim involves arbitration; excessiveness cases therefore provide courts with a helpful benchmark in those cases as well.").

9

The court recognizes that W.C. Motor has cited state and federal decisions from Missouri permitting punitive damages of up to 34 times actual damages in cases brought under the Missouri merchandising practices statute. *See Grabinski v. Blue Spring Ford Sales, Inc.*, 203 F.3d 1024, 1026 (8th Cir. 2000) (affirming a jury award of $210,000 in punitive damages on $7,835 in actual damages, a ratio of "approximately 27:1"); *Krysa v. Payne*, 176 S.W.3d 150, 160 (Mo. App. 2005) (affirming a jury award of $500,000 in punitive damages on $18,449.53 in compensatory damages, a ratio of 27.1 to 1); *cf. Scott v. Blue Springs Ford Sales, Inc.*, 215 S.W.3d 145 (Mo. App. 2006) (declining to review whether a punitive-to-compensatory damages ratio of 34:1 on a common law fraud claim was excessive, pending the outcome of a further jury trial on damages), *overruled in part on other grounds by Badahman v. Catering St. Louis*, 395 S.W.3d 29 (Mo. 2013) (en banc). The court further recognizes that in determining the amount of punitive damages that might be awarded in the arbitration, the court must consider punitive damage awards allowed by Missouri tribunals. *See Keeling v. Esurance Ins. Co.*, 660 F.3d 273, 275 (7th Cir. 2011); *Del Vecchio*, 230 F.3d at 979. That said, the Missouri decisions appear at odds with the above-cited Seventh Circuit cases, which hold that a multiplier of ten is at the outer limits of what due process allows, and, in particular, with *Anthony*, which held that a 17.35 multiplier would be unconstitutionally excessive. In any event, even a generous multiplier of 34, the maximum in the cases cited by W.C. Motor, would result in punitive damages of $13,260, which when added to $390 would bring Talley's recovery only to $13,650.

That leaves attorney fees, which must exceed $61,350 to bring Talley over the $75,000 threshold, even assuming (contrary to Seventh Circuit precedent) that a punitive damages multiplier of 34 would be permitted. Like punitive damages, attorney fees must be divided pro rata among Talley and the absent class members to compute the amount in controversy. *See*

*Crawford v. F. Hoffman-La Roche Ltd.*, 267 F.3d 760, 766-67 (8th Cir. 2001); *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1293 (10th Cir. 2001); *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 455 & n.5 (5th Cir. 2001); *Morrison v. Allstate Indemnity Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000); Wright *et al.*, *supra*, § 3704.2, pp. 649-50; 2 William B. Rubenstein, *Newberg on Class Actions* § 6:9, pp. 525-26 (5th ed. 2012). The Seventh Circuit has not directly addressed whether attorney fees are subject to the anti-aggregation rule, but it has unequivocally adopted the anti-aggregation rule as stated by the cases just cited. *See Travelers Property Cas.*, 689 F.3d at 721-22. And so the court concludes that the Seventh Circuit would require attorney fees to be divided pro rata among the class members, particularly given that no federal appeals court has held otherwise. *See Andrews v. Chevy Chase Bank*, 545 F.3d 570, 576 (7th Cir. 2008) (noting "that creating a circuit split generally requires quite solid justification" and that "we do not lightly conclude that our sister circuits are wrong."). Divided among 1,950 class members, even a wildly unrealistic $100 million attorney fee would amount to just $51,282 per class member. Even then, the jurisdictional amount would not be reached in this case.

For these reasons, both of W.C. Motor's jurisdictional arguments fail. It bears mention that W.C. Motor has *not* argued that the Missouri federal court's decision regarding subject matter jurisdiction is res judicata here. Remember that Talley sought to dismiss W.C. Motor's earlier suit on both jurisdictional and timeliness grounds, and the Missouri federal court chose the latter. Doc. 14-4. That court reached the timeliness issue only because it found that "a close question is presented here as to whether [W.C. Motor] has met its burden to show that the jurisdictional amount is met here," making the court "reluctant to hold that it would be a 'legal impossibility' for Talley to recover more than $75,000" if punitive damages and attorney fees were included. *Id.* at 6. W.C. Motor might have argued that the Missouri decision precludes

11

Talley from disputing the amount in controversy here, for when "the question of subject-matter jurisdiction ha[s] been fully litigated in the original forum, the issue c[an]not be retried in a subsequent action between the parties." *Durfee v. Duke*, 375 U.S. 106, 112 (1963). By not making that preclusion argument, W.C. Motor forfeited it.

This is so even though the forfeiture involves a question of subject matter jurisdiction. Settled precedent holds that "[n]o party can waive or forfeit *a lack* of subject-matter jurisdiction, which [the court] must enforce even if everyone else has ignored it." *United States v. Adigun*, 703 F.3d 1014, 1022 (7th Cir. 2012) (emphasis added, internal quotation marks omitted); *see also Travelers Property Cas.*, 689 F.3d at 718 ("Jurisdictional *objections* cannot be forfeited or waived, of course, for this court has an independent obligation to satisfy itself that federal subject matter jurisdiction exists.") (emphasis added, internal quotation marks omitted); *Dexia Credit Local v. Rogan*, 602 F.3d 879, 883 (7th Cir. 2010) ("neither the parties nor their lawyers may waive arguments that the court *lacks* jurisdiction") (emphasis added). By contrast, the *proponent* of subject matter jurisdiction, as with any party that bears the burden on a particular point, may forfeit an argument that could have been made to *support* jurisdiction. *See Travelers Property Cas.*, 689 F.3d at 718 ("[t]he court need not bend over backwards to construct alternative theories to persuade itself that subject matter jurisdiction exists"); *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008) ("arguments in favor of subject matter jurisdiction can be waived by inattention or deliberate choice"); *Cicero-Berwyn Elks Lodge No. 1510 v. Philadelphia Ins. Co.*, 2013 WL 1385675, at *2 (N.D. Ill. Apr. 4, 2013) (same). Thus, by not making the res judicata argument in favor of subject matter jurisdiction, W.C. Motor, the party with the burden of establishing jurisdiction, forfeited it.

The res judicata argument would have failed in any event. First, the Missouri court did not hold that the amount in controversy *had* been satisfied; it merely found that the issue presented "a close question" and that it was "reluctant to hold" that W.C. Motor had not met its burden. Preclusion cannot be grounded on a non-ruling like that. *See Bd. of Ed. of Okla. City v. Dowell*, 498 U.S. 237, 244-45 (1991) ("[P]etitioner contends that the 1977 order bars respondents from contesting the 1987 order. We disagree, for … the District Court's [1977] finding was too ambiguous to bar respondents from challenging later action by the Board."); *Aiken v. Peck*, 22 Vt. 255, 260 (1850) ("If, from the record … it should appear possible, that the question was left undecided, then there would be no estoppel; for an estoppel, in the language of Lord Coke, 'must be certain to every intent.'"), cited in *Russell v. Place*, 94 U.S. 606, 610 (1876); 18 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice & Procedure* § 4420, pp. 513-16 & n.12 (2d ed. 2002). Second, the arbitrator had not yet certified the class when the Missouri case was filed, so there were no class members among whom to divide the estimated attorney fees, which easily could exceed $75,000. Now there is a class and, as shown above, any attorney fee award must be allocated among the class members.

Before concluding, the court will briefly note that even if there were subject matter jurisdiction, W.C. Motor would face an uphill battle on the merits. Although it attempts to rescue its claim by raising in the second amended complaint the issue (whether the question whether a contract permits class arbitration is a "gateway" matter reserved for judicial determination) that *Oxford Health Plans* said remained open, W.C. Motor appears to have fallen into the same trap that ensnared the petitioner in that case. The Supreme Court did not reach that open question in *Oxford Health Plans* because the petitioner "agreed that the arbitrator should determine whether its contract with Sutter authorized class procedures." 133 S. Ct. at 2069 n.2;

*see also id*. at 2071 ("Oxford agreed with Sutter that an arbitrator should determine what their contract meant, including whether its terms approved class arbitration."). According to the arbitrator, W.C. Motor did the same thing. Doc. 43-2 at 3 (stating that the "parties agree that this Arbitrator has jurisdiction to decide th[e] threshold issue" of whether the contract permits class arbitration). Even absent that explicit concession, it would appear that W.C. Motor contractually agreed to let the arbitrator decide class arbitrability, as the parties' contract authorizes "arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules," and AAA Supplementary Rule 3, cited by the arbitrator, provides that "the arbitrator shall determine as a threshold matter … whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class." Doc. 43-2 at 2. But a ruling to that effect is unnecessary, and in fact is prohibited, because the court lacks subject matter jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998); *Leibovitch v. Islamic Republic of Iran*, 697 F.3d 561, 572-73 (7th Cir. 2012).

**Conclusion**

For the foregoing reasons, Talley's motion to dismiss this suit for lack of subject matter jurisdiction is granted. The dismissal is without prejudice. *See In re IFC Credit Corp.*, 663 F.3d 315, 320 (7th Cir. 2011) ("dismissal for want of jurisdiction, not being an adjudication on the merits, is without prejudice").

August 7, 2014

_____
United States District Judge